UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDON J. MILLAY,

                    Petitioner,                         Case No. 19-10053

v.                                                      HON. MARK A. GOLDSMITH

WILLIS CHAPMAN,

                    Respondent.
_____/

### OPINION AND ORDER
### (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING
### CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO PROCEED IN
### FORMA PAUPERIS ON APPEAL

This is a habeas case brought pursuant to 28 U.S.C. § 2254.  Following a jury trial in

Michigan's Genesee County Circuit Court, Michigan prisoner Brandon Millay (Petitioner) was

convicted of first-degree criminal sexual assault, Mich. Comp. L. § 750.520b(2)(b); two counts of

second-degree criminal sexual conduct, Mich. Comp. L. § 750.520c(1)(a); and aggravated

indecent exposure, Mich. Comp. L. § 750.335a(2)(b).   In 2014, he was sentenced as a fourth

habitual offender, Mich. Comp. L. § 769.12, to concurrent terms of 30 to 50 years' imprisonment;

19 to 41 years and 8 months' imprisonment; 19 to 33 years and 4 months' imprisonment; and 3

years and 10 months to 15 years' imprisonment.

In his pleadings, Petitioner raises claims concerning the denial of an evidentiary hearing,

the sufficiency and great weight of the evidence, the admission of alleged hearsay, and the

effectiveness of trial and appellate counsel (Dkt. 1).   Respondent has filed an answer to the habeas

petition contending that it should be denied (Dkt. 8).   For the reasons set forth below, the Court

denies the habeas petition.   The Court denies a certificate of appealability and denies Petitioner

leave to proceed in forma pauperis on appeal.

# I. BACKGROUND

Petitioner's convictions arise from his sexual assault of his minor daughter over a four-year

period at their home(s) in Genesee County, Michigan.   The Court adopts the facts set forth in

Respondent's answer to the petition to the extent that those facts are consistent with the record.

Those facts are as follows:

> In 2013, eight-year-old BM revealed that her father, Millay, had been touching her
> private parts about three days per week for the past four years.   (5/9/14 Trial Tr,
> R. 7-11, ID 906–08, 912–13.)   She explained that Millay touched her with his
> index finger and his hand on the outside of her front private part.   (Id. at ID 908–
> 09, 918, 921.)   On one occasion, she recalled that Millay put his finger inside her
> butt. (Id. at   ID 924.)   She also said that, on at least one occasion, Millay put his
> genitals on her private parts, but not inside.   (Id. at ID 926.)   BM described the
> pain she felt as feeling "like a rock" on the inside and outside of her private part.
> (Id. at ID 915.)
>
> BM also explained that Millay sometimes exposed his genitals and butt to her.   (Id.
> at ID 918.)   On more than one occasion, while in BM's bedroom, Millay asked BM
> to hold his genitals, wiggle it, and she would see something come out of it onto her
> bed and pillow, but she did not know what it was.   (Id. at ID 919–20.)   On multiple
> occasions, Millay also showed BM explicit videos on his phone of people "touching
> each other's privates."   (Id. at ID 921–22.)
>
> According to BM, Millay told her not to tell anyone about what he did to her
> because "mom would get mad" and he would go to jail, which made it difficult for
> BM to talk about what Millay did to her.   (Id. at ID 910–11, 917.)   BM decided
> to tell because she was afraid "it would happen to other little kids."   (Id. at ID 931.)
>
> After she first disclosed her abuse to her mother and grandma, BM was taken to a
> local hospital for treatment.   There, BM was initially examined by Deborah
> Freeman, a registered nurse.   (Id. at ID 856.) After learning of the reason BM was
> at the hospital, Freeman asked for BM's mother and grandmother to step out of the
> patient-room while she spoke with BM.   (Id. at ID 858.)
>
> After determining that BM knew the difference between the truth and a lie, Freeman
> asked her about her problems urinating.   (Id. at ID 865–67.)   BM looked to the

floor and would not maintain eye contact. (<u>Id.</u> at ID 872.)   Eventually, BM admitted that her father had been touching her and that it had been going on for four years. (<u>Id.</u>)   BM told nurse Freeman that her father touched her private parts with his hand, at which point she began crying. (<u>Id.</u> at ID 872–74.)   On inspection of BM's vaginal area, nurse Freeman noted swelling and redness. (<u>Id.</u> at ID 887.)

Dr. Kelli Fritz, an emergency medical physician, examined BM shortly after nurse Freeman. (5/8/14 Trial Tr, R. 7-10, ID 766–68.)   She examined BM's vaginal and anal area for trauma and also performed a rape kit. (<u>Id.</u>)   Dr. Fritz did not notice redness of the vaginal area, and the urinalysis was normal. (<u>Id.</u> at ID 769.)

During the ensuing investigation, authorities seized evidence from BM's bedroom, including her bed sheet.   Testing revealed that the bed sheet contained Millay's seminal fluid. (5/13/19 Trial Tr, R. 7-12, ID 981; R. 7-15, ID 1239–41.) Authorities also interviewed Millay, who admitted that one time when "he was in the bed with his wife[,] . . . [BM] was laying in between them, and he put his finger in her vagina." (<u>Id.</u> at ID 987–88.)   Millay said that BM had on pajamas, which he pulled down. (<u>Id.</u> at ID 991.)   He claimed that he "thought [BM] was his wife." (<u>Id.</u> at ID 987.)   Millay also admitted ejaculating on BM's bed sheet and showing her pornographic videos. (<u>Id.</u> at ID 1013–18.)

Resp't Answer at PageID.1435–1437.   The Court also adopts the more detailed summary of the

trial testimony that is provided in Petitioner's brief on direct appeal in state court to the extent that

those facts are consistent with the record.   <u>See</u> Pet'r Br., <u>in</u> Mich. Ct. App. 322616 at

PageID.1171–1182 (Dkt. 7-15).

Following his convictions and sentencing, Petitioner filed a direct appeal with the Michigan

Court of Appeals, raising the following claims:   (i) the trial court should have either suppressed

his oral statement to a police detective, or the jury should have been instructed that it may consider

the absence of a recording in evaluating evidence relating to his statement, and trial counsel was

ineffective in this regard; (ii) the introduction of his alleged statement that he digitally penetrated

the complaining witness violated the corpus delecti rule; and (iii) he was denied a fair trial by the

admission of the complaining witness's hearsay statements.   <u>Id.</u> at PageID.1166, 1185.   The

Michigan Court of Appeals denied relief on those claims and affirmed Petitioner's convictions.

3

People v. Millay, No. 322616, 2015 WL 6087201, at *1 (Mich. Ct. App. Oct. 15, 2015). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims.   Mich. Supreme Ct. 152768 at PageID.1321–1329 (Dkt. 7-16).   In a standard order, the Michigan Supreme Court denied the application.   People v. Millay, 878 N.W.2d 854 (Mich. 2016).

Petitioner subsequently filed with the trial court a motion for relief from judgment, raising the following claims:  (i) the prosecution failed to present sufficient evidence; (ii) the trial court erred and abused its discretion by allowing admission of hearsay in violation of Petitioner's constitutional right to a fair trial; and (iii) trial and appellate counsel were ineffective because they failed to investigate and present a substantial defense, conduct a reasonable investigation, interview witnesses, and call witnesses and/or question them adequately.   See People v. Millay, No. 13-033113-FC (Genesee Cnty. Cir. Ct. Aug. 30, 2017), in Mich. Supreme Ct. 157747 at PageID.1424 (Dkt. 7-17).   The trial court denied the motion and determined that, to the extent that Petitioner failed to raise his claims on direct appeal, he was not entitled to relief because he failed to demonstrate cause and prejudice under Michigan Court Rule 6.508(D)(3).   Id. at PageID.1424–1425.   It also determined that, to the extent that he previously raised his claims (namely his hearsay challenge), he was not entitled to relief based upon Michigan Court Rule 6.508(D)(2).   Id.

Petitioner filed with the Michigan Court of Appeals a delayed application for leave to appeal, which was denied for failure to establish that the trial court erred in denying the motion for relief from judgment.   People v. Millay, No. 341126 (Mich. Ct. App. April 19, 2018).   Petitioner also filed with the Michigan Supreme Court an application for leave to appeal, which was denied

4

for failure to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D).   People v. Millay, 919 N.W.2d 45 (Mich. 2018).

Petitioner then filed his federal habeas petition.   He raises the following claims:

I.     His Fourteenth Amendment due process rights were violated because the state courts failed to conduct a post-conviction evidentiary hearing and expand the record.

II.    The prosecution presented insufficient evidence of his guilt, and his convictions were against the great weight of the evidence.

III.   The trial court abused its discretion by allowing admission of hearsay in violation of his Sixth Amendment rights and Michigan Rule of Evidence 803.

IV.    Trial and appellate counsel were ineffective for failing to investigate and present a substantial defense, failing to interview and call witnesses, and failing to call experts.

V.     Cause and prejudice are established because appellate counsel was ineffective for failing to raise the collateral review issues on direct appeal.

Respondent filed an answer to the habeas petition, contending that certain claims are procedurally defaulted and that all of the claims lack merit.   Petitioner filed a reply (Dkt. 9).

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2241 et seq., sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state-court convictions.   The statute provides in relevant part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

"A state court's decision is 'contrary to' . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court cases] or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15–16 (2003).   An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme] Court to the facts of a prisoner's case." Williams v. Taylor, 529 U.S. 362, 409 (2000).   For a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision "must have been more than incorrect or erroneous" and rather must have been "objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520–521 (2003).   To obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).   Thus, AEDPA imposes a "highly deferential" standard for evaluating state-court rulings and "demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (punctuation modified).

Moreover, § 2254(d)(1) limits a federal habeas court's review to determining whether the state court's decision comports with clearly established federal law as determined by the Supreme

6

Court at the time the state court renders its decision.   Williams, 529 U.S. at 412.   Federal circuit-court precedent does not constitute "clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), and it cannot provide the basis for federal habeas relief. Parker v. Matthews, 567 U.S. 37, 48–49 (2012).   The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue.   Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007).

A state court's factual determinations are presumed to be correct on federal habeas review. See 28 U.S.C. § 2254(e)(1).   A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence.   Id.   For claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court."   Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

## III.   DISCUSSION

The Court first addresses Respondent's argument that certain claims are procedurally defaulted.   It then discusses Petitioner's claims for relief.

### A.  Procedural Default

As an initial matter, Respondent contends that two of Petitioner's claims are barred by procedural default because Petitioner first raised those issues in the state courts on post-conviction collateral review, and the state courts denied relief pursuant to Michigan Court Rule 6.508(D): (i) Petitioner's claim that the prosecution presented insufficient evidence of his guilt and that his convictions were against the great weight of the evidence, and (ii) Petitioner's ineffective assistance of trial counsel claim.   Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.   Wainwright v.

7

Sykes, 433 U.S. 72, 85–87 (1977).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "an independent and adequate state ground to foreclose review of the federal constitutional claim."  White v. Mitchell, 431 F.3d 517, 524 (6th Cir. 2005).  Courts must look to the last-explained state-court judgment to determine why the state court rejected a prisoner's claim.  Ylst v. Nunnemaker, 501 U.S. 797, 803–805 (1991).  The Supreme Court has applied a presumption that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  Id. at 803.

Petitioner first presented his insufficient evidence/great weight claim and ineffective assistance of trial counsel claim in his motion for relief from judgment.  The Michigan Supreme Court, the last state court to rule on the matter, denied leave to appeal pursuant to Michigan Court Rule 6.508(D).  That rule provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief that could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice.  See Mich. Ct. R. 6.508(D)(3).  The United States Court of Appeals for the Sixth Circuit has held that the type of form order that the Michigan Supreme Court used to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a denial of relief on the merits.  See Guilmette v. Howes, 624 F.3d 286, 291–292 (6th Cir. 2010).  Consequently, under Guilmette, to determine the basis for the denial of state post-conviction relief, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision.

8

In this case, the state trial court denied relief on procedural grounds by ruling that Petitioner had not shown cause and prejudice under Michigan Court Rule 6.508(D)(3) for his failure to raise the claims on direct appeal of his convictions. See Millay, No. 13-033113-FC, in Mich. Supreme Ct. 157747 at PageID.1424–1425. The state courts thus relied upon a procedural default to deny Petitioner relief on these claims. Accordingly, the insufficient evidence/great weight and ineffective assistance of trial counsel claims are procedurally defaulted.

Respondent also contends that the confrontation portion of Petitioner's hearsay claim is unexhausted and now procedurally defaulted because Petitioner did not raise that aspect of the claim on direct appeal or on collateral review in the state courts, and he no longer has a means by which to do so. A prisoner filing a habeas petition under 28 U.S.C. § 2254 must first exhaust all state remedies. See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (explaining that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"). To satisfy this requirement, the claims must be "fairly presented" to the state courts, meaning that the petitioner must have asserted both the factual and legal bases for the claims in the state courts. McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000). The claims must also be presented to the state courts as federal constitutional issues. Koontz v. Glossa, 731 F.2d 365, 368 (6th Cir. 1984). Further, each issue must be presented to both the Michigan Court of Appeals and the Michigan Supreme Court to satisfy the exhaustion requirement. Hafley v. Sowders, 902 F.2d 480, 483 (6th Cir. 1990). While the exhaustion requirement is not jurisdictional, a "strong presumption" exists that a petitioner must exhaust all available state remedies before seeking federal habeas review.

Granberry v. Greer, 481 U.S. 129, 131, 134–135 (1987).   The burden is on the petitioner to prove exhaustion.   Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994).

Petitioner did not exhaust the confrontation portion of his hearsay claim in the state courts. While he raised an evidentiary and due process challenge, he did not raise a confrontation violation as a distinct issue in the state courts.   Therefore, this claim is unexhausted.   Moreover, Petitioner no longer has an available remedy in the state courts because he has already filed a motion for relief from judgment.   Any attempt to file a second motion for relief from judgment would be futile.   Under Michigan Court Rule 6.502(G)(1), a state criminal defendant is generally permitted to file only one post-conviction motion for relief from judgment.   Gadomski v. Renico, 258 F. App'x 781, 783 (6th Cir. 2007); Hudson v. Martin, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999). The confrontation portion of Petitioner's hearsay claim does not fall within the exceptions for filing a second motion.   See Mich. Ct. R. 6.502(G)(2) (providing that exceptions include a retroactive change in the law that occurred after the first motion or a claim of new evidence that was not discovered before the first motion and stating that the court may waive the rule due to a significant possibility of innocence).

Because Petitioner did not fully exhaust the confrontation issue in the state courts and no longer has an available remedy by which to do so, that claim is now procedurally defaulted for the purpose of federal habeas review.   See Gray v. Netherland, 518 U.S. 152, 161–162 (1996); Pudelski v. Wilson, 576 F.3d 595, 605 (6th Cir. 2009).

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review, absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing that failure to consider the prisoner's claims

will result in a fundamental miscarriage of justice.   Coleman v. Thompson, 501 U.S. 722, 750–751 (1991); Nields v. Bradshaw, 482 F.3d 442, 450 (6th Cir. 2007).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his procedural default.   To establish ineffective assistance of counsel, the petitioner must show (i) that counsel's performance was deficient and (ii) that the deficient performance prejudiced the defense.   Strickland v. Washington, 466 U.S. at 668, 687 (1984).   The Supreme Court has stated the following regarding determining whether counsel's performance was deficient:

> The court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Id. at 690.   Judicial scrutiny of counsel's performance is thus "highly deferential."   Id. at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   Id. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.   Jones v. Barnes, 463 U.S. 745, 751 (1983).   The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

Id. at 754.   Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."   United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990).   In fact, "the hallmark of effective appellate advocacy" is the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail."   See Smith v.

11

Murray, 477 U.S. 527, 536 (1986) (punctuation modified).   "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of appellate counsel be overcome."   Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002).   For instance, appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue that was obvious from the trial record and would have resulted in reversal on appeal.   Meade v. Lavigne, 265 F. Supp. 2d 849, 872 (E.D. Mich. 2003).

Petitioner fails to show that, by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance.   Appellate counsel raised substantial issues on direct appeal concerning the admission of Petitioner's police statements, the effectiveness of trial counsel, the corpus delicti rule, and the admission of alleged hearsay statements.   None of the collateral review claims is a "dead-bang winner."   Additionally, as to the confrontation issue, Petitioner had the opportunity to raise that claim on collateral review and failed to do so.   Petitioner fails to show that appellate counsel's performance was deficient so as to establish cause to excuse his default.   Moreover, even if appellate counsel erred in some fashion, Petitioner cannot establish that he was prejudiced by counsel's conduct because the defaulted claims lack merit for the reasons stated below.

Courts need not address the issue of prejudice when a habeas petitioner fails to establish cause to excuse a procedural default.   Smith v. Murray, 477 U.S. 527, 533 (1986).   Nonetheless, even if Petitioner could establish cause, he cannot establish prejudice because the defaulted claims lack merit for the reasons stated below.

Petitioner also does not demonstrate that the failure to consider his claims would result in a fundamental miscarriage of justice.   The exception under which a federal court may review a

petitioner's procedurally defaulted claims if the failure to do so would result in a fundamental miscarriage of justice requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.   Murray v. Carrier, 477 U.S. 478, 495–496 (1986).   Actual innocence means factual innocence, not mere legal insufficiency.   Bousley v. United States, 523 U.S. 614, 623 (1998).   To be credible, a claim of actual innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial.   Schlup v. Delo, 513 U.S. 298, 324 (1995).   Petitioner makes no such showing.   The foregoing claims are thus barred by procedural default, and, in addition, they lack merit and do not warrant federal habeas relief.

### B.   Petitioner's Claims for Relief

The Court addresses each of Petitioner's claims for relief in turn.

### 1.   Evidentiary Hearing and Expanded Record Claim

Petitioner first asserts that he is entitled to habeas relief because the state courts failed to conduct an evidentiary hearing or expand the record on post-conviction collateral review.   This claim is not cognizable on federal habeas review because it is a state-law claim.   See Hayes v. Prelesnik, 193 F. App'x 577, 584 (6th Cir. 2006) (citation omitted).   A state court's alleged failure to properly apply state law or its own procedural rules, even if well-established, is not cognizable on federal habeas review.   See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").   The Court's power to grant a writ of habeas corpus extends only to errors in the application of federal law.   Id.   There is also no clearly established Supreme Court precedent that recognizes a constitutional right to an evidentiary hearing or expanded record on state

post-conviction review.   Hayes, 193 F. App'x at 584; Davis v. Ludwick, No. 10-CV-11240, 2013

WL 1212833, at *18 (E.D. Mich. March 25, 2013) (denying habeas relief on similar evidentiary

hearing claim); Hall v. Berghuis, No. 07-12163, 2009 WL 2244793, at *9 (E.D. Mich. July 27,

2009) (finding similar evidentiary hearing claim non-cognizable on federal habeas review).

Therefore, habeas relief is not warranted on this claim.

### 2.   Sufficiency of the Evidence/Great Weight Claim

Petitioner next asserts that he is entitled to habeas relief because the prosecution presented

insufficient evidence to support his convictions, and his convictions are against the great weight

of the evidence.

The Due Process Clause protects an accused against conviction "except upon proof beyond

a reasonable doubt of every fact necessary to constitute the crime with which he is charged."   In

re Winship, 397 U.S. 358, 364 (1970).   The question on a claim challenging the sufficiency of the

evidence to support a conviction is "whether, after viewing the evidence in the light most favorable

to the prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt."   Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in

original).   The Jackson standard must be applied "with explicit reference to the substantive

elements of the criminal offense as defined by state law."   Brown v. Palmer, 441 F.3d 347, 351

(6th Cir. 2006) (quoting Jackson, 443 U.S. at 324 n.16).

Additionally, "it is the responsibility of the jury—not the court—to decide what

conclusions should be drawn from the evidence admitted at trial."   Cavazos v. Smith, 565 U.S. 1,

2 (2011).   "A reviewing court does not reweigh the evidence or redetermine the credibility of the

witnesses whose demeanor has been observed by the trial court."   Matthews v. Abramajtys, 319

F.3d 780, 788 (6th Cir. 2003). Accordingly, the "mere existence of sufficient evidence to convict

. . . defeats a petitioner's claim." Id. at 788–789.

Under Michigan law, the elements of first-degree criminal sexual conduct, as charged in

this case, are (i) that the defendant engaged in sexual penetration with another person and (ii) that

the other person was under 13 years of age. Mich. Comp. L. § 750.520b(1)(a); People v.

Hammons, 534 N.W.2d 183, 184 (Mich. Ct. App. 1995). The statute defines "sexual penetration"

as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however

slight, of any part of a person's body or of any object into the genital or anal openings of another

person's body." Mich. Comp. L. § 750.520a(r).

The elements of second-degree criminal sexual conduct, as charged in this case, are: (i)

sexual contact (ii) with a person under 13 years of age. Mich. Comp. L. § 750.520c(1)(a); People

v. Lemons, 562 N.W.2d 447, 456 (Mich. 1997). The statute defines "sexual contact" as the

following:

> the intentional touching of the victim's or actor's intimate parts or the intentional
> touching of the clothing covering the immediate area of the victim's or actor's
> intimate parts, if that intentional touching can reasonably be construed as being for
> the purpose of sexual arousal or gratification, done for a sexual purpose, or in a
> sexual manner for:
>> (i) Revenge.
>> (ii) To inflict humiliation.
>> (iii) Out of anger.

Mich. Comp. L. § 750.520a(q). "Intimate parts" include "the primary genital area, groin, inner

thigh, buttock, or breast of a human being." Mich. Comp. L. § 750.520a(f).

To convict a person of aggravated indecent exposure, the prosecutor must prove that the

defendant knowingly made an open or indecent exposure of his or her person, Mich. Comp. L. §

750.335a(1); People v. Neal, 702 N.W.2d 696, 701 (Mich. Ct. App. 2005), and that he or she

15

fondled his or her "genitals, pubic area, or buttocks," Mich. Comp. L. § 750.335a(2)(b). "Indecent exposure" is "the exhibition of those private parts of the person which instinctive modesty, human decency or natural self-respect requires shall be customarily kept covered in the presence of others." People v. Huffman, 702 N.W.2d 621, 630 (Mich. Ct. App. 2005). The exposure of genitals to a child, even when done at home, may constitute indecent exposure. Neal, 702 N.W.2d at 702.

The prosecution must prove every element of a charged offense beyond a reasonable doubt. This burden includes proving that the defendant is the person who committed the crime. People v. Oliphant, 250 N.W.2d 443, 449 (Mich. 1976); People v. Kern, 149 N.W.2d 216, 218 (Mich. Ct. App. 1967). Direct or circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of an offense, People v. Nowack, 614 N.W.2d 78, 81 (Mich. 2000), including identity, Kern, 149 N.W.2d at 218, and intent or state of mind, People v. Dumas, 563 N.W.2d 31, 34 (Mich. 1997); Nowack, 614 N.W.2d at 83.

In this case, the victim's preliminary examination testimony, which was admitted into evidence at trial, established that she was between four and eight years old at the time of the incidents and that Petitioner touched her front private part, put his finger inside her butt, put his genitals on her private parts, exposed his genitals and butt to her, asked her to hold his genitals and wiggle it until he ejaculated, and showed her explicit videos on his phone. 5/9/14 Jury Trial Tr. at PageID.908−922 (Dkt. 7-11). The testimony of a victim alone can be constitutionally sufficient to sustain a conviction. See Tucker v. Palmer, 541 F.3d 652, 658 (6th Cir. 2008). Moreover, the police recovered Petitioner's semen from the victim's bed sheets. 5/13/14 Jury Trial Tr. at PageID.981 (Dkt. 7-12); Mich. Ct. App. 322616 at PageID.1239−1241. An examining nurse

16

testified about the victim's disclosure of the sexual abuse during the course of her examination. 5/9/14 Jury Trial Tr. at PageID.872–874. Petitioner also admitted to police that he digitally penetrated the victim (albeit claiming that he thought she was his wife), ejaculated on the victim's bed, and showed the victim sexually explicit materials. 5/13/14 Jury Trial Tr. at PageID.987–1018. The victim's testimony, the police and medical testimony, and Petitioner's own admissions, considered in a light favorable to the prosecution, established beyond a reasonable doubt that Petitioner committed first-degree criminal sexual conduct, two counts of second-degree criminal sexual conduct, and aggravated indecent exposure.

Petitioner challenges the jury's evaluation of the testimony, particularly the medical testimony, and the other evidence presented at trial, as well as the inferences the jury drew from the evidence. However, it is the job of the factfinder at trial, not a federal habeas court, to resolve evidentiary conflicts. Jackson, 443 U.S. at 319, 326; see also Walker v. Engle, 703 F.2d 959, 970 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.") (punctuation modified). The jury's verdict was reasonable. The evidence presented at trial, viewed in a light favorable to the prosecution, established Petitioner's guilt beyond a reasonable doubt. This satisfied the Jackson standard of "any rational trier of fact" finding the "proof beyond reasonable doubt" standard met. Therefore, habeas relief is not warranted on Petitioner's claim that the prosecution presented insufficient evidence to support his convictions.

Petitioner is also not entitled to habeas relief on any claim that the jury verdict was against the great weight of the evidence.  It is well-established that it is not the province of a federal habeas court to correct errors of state law.  Estelle, 502 U.S. at 67–68.  The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in Jackson.  Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state-law issue that is not cognizable on federal habeas review.  "A federal habeas court . . . has no power to grant habeas relief on a claim that a state conviction is against the great weight of the evidence.   Such a claim is not of constitutional dimension for habeas corpus purposes unless the record is so devoid of evidentiary support that a due process issue is raised," which is not the case here.  Cukaj v. Warren, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); see also Dell v. Straub, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002) ("The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it . . . Because there was sufficient evidence to convict petitioner of these crimes, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief.").

### 3. Admission of Hearsay Claim

Petitioner next asserts that he is entitled to habeas relief because (i) the trial court erred in admitting the victim's preliminary examination testimony after finding her unavailable to testify at trial due to lack of memory/a mental health condition, and (ii) the trial court erred in admitting the victim's statements to the examining nurse.

Petitioner first contends that the admission at trial of the victim's preliminary examination testimony violated his confrontation rights.   Respondent contends that Petitioner is not entitled to

habeas relief on this claim because Petitioner expressly waived the victim's appearance at trial and agreed to have her preliminary examination testimony read into evidence.   See 5/6/14 Hr'g Tr. at PageID.288 (Dkt. 7-8).   This Court agrees.   Waiver is an "intentional relinquishment or abandonment of a known right or privilege."   Johnson v. Zerbst, 304 U.S. 458, 464 (1938).   A criminal defendant who waives rights "may not then seek appellate review of claimed deprivation of those rights, for his waiver has extinguished any error."   United States v. Griffin, 84 F.3d 912, 924 (7th Cir. 1996); see also Shahideh v. McKee, 488 F. App'x 963, 965 (6th Cir. 2012) (stating that "[s]uch a waiver is a recognized, independent and adequate state law ground for refusing to review alleged trial errors").   The right to confrontation may be waived.   Melendez-Diaz v. Massachusetts, 557 U.S. 305, 313 n.3 (2009).   Because Petitioner stipulated to the admission of the victim's preliminary examination testimony, he waived review of this claim.   See United States v. Chun Ya Cheung, 350 F. App'x 19, 21–22 (6th Cir. 2009).

Moreover, Petitioner's confrontation rights were not violated by the admission of the victim's preliminary examination testimony.   The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him or her.   U.S. Const. amend. VI.   One of the main concerns of the Confrontation Clause is to ensure the reliability of evidence through cross-examination.   Maryland v. Craig, 497 U.S. 836, 845 (1990). The Confrontation Clause thus prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify, and the defendant had a prior opportunity for cross-examination.   Crawford v. Washington, 541 U.S. 36, 59 (2004).   While the Sixth Circuit has noted that there is "some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes,"

19

Al–Timimi v. Jackson, 379 F. App'x 435, 437 (6th Cir. 2010) the Supreme Court has never held that a defendant is denied the right of confrontation when a witness is unavailable at trial and the court admits the witness's preliminary examination testimony.   Id. at 438.

In this case, the record shows that the trial court conducted a pretrial hearing, in which both parties questioned the victim about her ability to recall events, and concluded that the victim was unavailable for trial due to her lack of memory/mental health condition.   The parties then stipulated to the use of her preliminary examination testimony without requiring her appearance at trial.   See 5/6/14 Hr'g Tr. at PageID.257–289.   The record also shows that Petitioner had an adequate opportunity, and the same motive, to question the victim at the preliminary examination. See 10/8/13 Prelim. Exam. Tr. at PageID.107–113 (Dkt. 7-4).   Consequently, his confrontation rights were not violated by the admission of the victim's preliminary examination testimony at trial.   See Al-Timimi, 379 F. App'x at 438–440; see also Williams v. Bauman, 759 F.3d 630, 636 (6th Cir. 2014) (denying habeas relief on similar claim).   Therefore, habeas relief is not warranted on this claim.

Petitioner also asserts that the admission of the victim's statements to the examining nurse violated state-law evidentiary rules and his right to a fair trial.   Alleged trial court errors in the application of state evidentiary law, however, are generally not cognizable as grounds for federal habeas relief.   See Estelle, 502 U.S. 62, 67–68 (1991); Serra v. Mich. Dep't of Corr., 4 F.3d 1348, 1354 (6th Cir. 1993).   "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."   McAdoo v. Elo, 365 F.3d 487, 494 (6th Cir. 2004).

The Michigan Court of Appeals considered this claim on direct appeal and denied relief. The court ruled that the nurse's testimony relaying the statements that the victim made during her examination was properly admitted under the medical treatment exception to the hearsay rule set forth in Michigan Rule of Evidence 803(4).   Millay, 2015 WL 6087201, at *3–*5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law to the facts.   To the extent that Petitioner challenges the ruling under Michigan law, he fails to state a cognizable habeas claim.   State courts are the final arbiters of state law, and federal courts will not intervene in such matters.   See Lewis v. Jeffers, 497 U.S. 764, 780 (1990); see also Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").   Habeas relief does not lie for perceived errors of state law.   Estelle, 502 U.S. at 67–68.

Further, Petitioner fails to establish that the admission of the testimony violated due process or rendered his trial fundamentally unfair.   The victim's statements to the nurse were made during the victim's medical examination, provided a possible cause for the victim's medical condition, and helped the nurse determine the appropriate testing and course of treatment for the victim.   The testimony fell within a well-established exception to the hearsay rule, and Petitioner fails to show that its admission was improper, let alone fundamentally unfair.   Habeas relief is not warranted on this claim.

21

**4. Effectiveness of Trial Counsel Claim**

Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to investigate his case and present a substantial defense; failing to interview and call witnesses, including experts; and failing to adequately question witnesses at trial.

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must demonstrate that counsel's performance was deficient., which requires showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>Id.</u> at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious that they deprived the petitioner of a fair trial or appeal. <u>Id.</u>

To establish deficient performance, a petitioner must identify acts or omissions that were "outside the wide range of professionally competent assistance." <u>Id.</u> at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. <u>Id.</u> at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. <u>Id.</u> at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. <u>Id.</u> at 689.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. <u>Id.</u> "The benchmark for judging any claim of ineffectiveness must be whether

22

counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." <u>Id.</u> at 686.

The Supreme Court has confirmed that, due to the deference afforded trial attorneys and the state appellate courts reviewing their performance, a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review. "The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, . . . and when the two apply in tandem, review is 'doubly' so." <u>Harrington</u>, 562 U.S. at 105 (punctuation modified). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Id.</u>

In this case, Petitioner fails to show that trial counsel was deficient or that he was prejudiced by trial counsel's conduct. While he alleges that trial counsel failed to investigate his case and present a defense, failed to interview and call witnesses, and failed to adequately question witnesses, he offers no specific details about what counsel would have discovered or presented that would have cast doubt upon the prosecution's case or benefitted his defense. He fails to provide any additional witnesses, affidavits, expert testimony, physical evidence, or even a relevant line of questioning in support of this claim. Conclusory allegations, without evidentiary support, are insufficient to warrant federal habeas relief. <u>See</u> <u>Workman v. Bell</u>, 178 F.3d 759, 771 (6th Cir. 1998) (finding that conclusory allegations of ineffective assistance of counsel did not justify habeas relief); <u>Wogenstahl v. Mitchell</u>, 668 F.3d 307, 335–336 (6th Cir. 2012) (finding that petitioner's conclusory allegations of ineffective assistance of trial counsel were insufficient to overcome the presumption of reasonable professional assistance and to warrant habeas relief).

23

Petitioner thus fails to establish that trial counsel was ineffective under the <u>Strickland</u> standard. Habeas relief is not warranted on this claim.

### 5. Effectiveness of Appellate Counsel Claim

Petitioner raises an independent claim that he is entitled to habeas relief because appellate counsel was ineffective for failing to properly investigate his case and failing to raise the collateral review issues on direct appeal.

Petitioner raised the issue of ineffective assistance of appellate counsel on collateral review in the state courts.   The trial court found that Petitioner had not established good cause for his failure to raise his collateral review claims on direct appeal, essentially concluding that Petitioner failed to show that appellate counsel was ineffective.   <u>Millay</u>, No. 13-033113-FC, <u>in</u> Mich. Supreme Ct. 157747 at PageID.1424–1425.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law to the facts.   As with his ineffective assistance of trial counsel claim, Petitioner's allegation that appellate counsel failed to investigate his case is conclusory and does not justify habeas relief.   Further, Petitioner fails to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance.   Appellate counsel raised significant issues on direct appeal, and none of the claims subsequently raised by Petitioner is a "dead-bang winner."   Even if appellate counsel had erred, Petitioner cannot show that he was prejudiced by counsel's conduct, given that the underlying claims lack merit.   Appellate counsel cannot be deemed ineffective for failing to raise issues that lack merit.   <u>See</u> <u>Coley v. Bagley</u>, 706

F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").   Habeas relief is not warranted on this claim.

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims.   Accordingly, the Court denies and dismisses with prejudice the petition for a writ of habeas corpus.

### C. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253.   Fed. R. App. P. 22.   Rule 11 of the Rules Governing Section 2254 Proceedings requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   R. Governing § 2254 Proceedings 11.   A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   When a federal district court denies relief on the merits, the substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   Slack v. McDaniel, 529 U.S. 473, 484 (2000).   When a federal district court denies relief on procedural grounds, a certificate of appealability should issue when the petitioner "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."   Id.

In this case, Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims, and jurists of reasons could not debate the correctness of the

Court's procedural rulings.   Therefore, the Court denies a certificate of appealability.

### D. Leave to Proceed <u>In Forma Pauperis</u> on Appeal

A court may grant an application for leave to proceed <u>in forma pauperis</u> on appeal if it finds that an appeal can be taken in good faith.   28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(2). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits.   <u>Foster v. Ludwick</u>, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).   The Court finds that an appeal could not be taken in good faith.   Therefore, it denies Petitioner leave to proceed <u>in forma pauperis</u> on appeal.

## IV. CONCLUSION

For the reasons set forth above, the Court denies and dismisses with prejudice the petition for a writ of habeas corpus, declines to issue a certificate of appealability, and denies Petitioner leave to proceed <u>in forma pauperis</u> on appeal.

SO ORDERED.

Dated: February 16, 2022               s/Mark A. Goldsmith
       Detroit, Michigan              MARK A. GOLDSMITH
                                    United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 16, 2022.

                                    s/Karri Sandusky
                                    KARRI SANDUSKY
                                    Case Manager